UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**RICHARD A. MEROLA and AQUA-MANIA, INC.,**

                          **Plaintiffs,**

                    -v-                                      **5:10-CV-1493**
                                                           **(NAM/GHL)**

**JAMIE WOODWARD, INDIVIDUALLY AND AS ACTING
COMMISSIONER, NEW YORK STATE DEPARTMENT
OF TAXATION AND FINANCE, JEFFREY BERTHOFF,
INDIVIDUALLY AND IN HIS CAPACITY AS TCA II
SPECIALIST, NEW YORK STATE DEPARTMENT OF
TAXATION AND FINANCE AND THE NEW YORK
STATE DEPARTMENT OF TAXATION AND
FINANCE,**

                          **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

## MEMORANDUM-DECISION AND ORDER

Plaintiffs Richard A. Merola ("Merola") and Aqua-Mania, Inc. ("Aqua-Mania") commenced this civil rights action pursuant to 42 U.S.C. § 1983 claiming violations of plaintiffs' rights under the Fifth Amendment and Fourteenth Amendment. On December 10, 2010, this Court denied plaintiffs' *ex parte* application for a temporary restraining order. (Dkt. No. 11). Presently before this Court is plaintiffs' motion for a preliminary injunction. (Dkt. Nos. 6, 19). Defendants have opposed the motion and have cross-moved to dismiss portions of the complaint. (Dkt. No. 14).

## BACKGROUND

In support of this motion, plaintiffs submit the affidavit of Richard A. Merola, president and sole shareholder of Aqua-Mania. The facts found in Merola's affidavit and attachments and

in the complaint are as follows: Merola is the sole shareholder and president of Aqua-Mania. Aqua-Mania is a retail store selling boats and personal water craft in Alexandria Bay, New York. In July 2000, the Division of Taxation ("Division") conducted an audit of Aqua-Mania's records for the period of May 31, 1997 through June 1, 2000. The auditor discovered that plaintiffs had not charged sales tax on the sales of six boats sold during the audit period. In January 2001, the case was referred to the Revenue Crimes Bureau ("RCB"). After RCB's investigation, the matter was referred to the New York State Office of the Attorney General. Plaintiffs were charged in Jefferson County with failing to collect sales tax in violation of New York Tax Law § 1817(c)(2)(A) in the amount of $56,040.00.[1]

On October 3, 2003, pursuant to a plea agreement, Merola plead guilty to one count of offering a false instrument for filing in the second degree (Penal Law § 175.30), a class A misdemeanor. Aqua-Mania plead guilty to one count of failure to collect sales tax, a class E felony. Plaintiffs agreed to pay restitution in the amount of $56,040.00. Paragraph 12 of the agreement provided:

> This plea agreement does not prevent the Tax Department from seeking full payment for remaining unpaid corporate sales tax, or any applicable interest or penalties owed by the defendants.

(Merola Aff., Exhibit "B").

During plaintiffs' plea and sentence hearing, the government advised the court that the

---

[1] New York State Tax Law § 1817(c)(2)(A) provides:

A person is guilty of failure to collect sales tax when he fails to collect a sales tax required to be collected by article twenty-eight of this chapter and when he does so with intent to defraud the state or a political subdivision thereof and thereby deprives the state or a political subdivision thereof, or both together, of ten thousand dollars or more. Failure to collect sales tax under this paragraph is a class E felony.

people intended to file a Judgment by Confession. The Confession of Judgment, executed on October 3, 2003, provided, in pertinent part:

> ORDERED AND ADJUDGED, that the New York State Department of Taxation and Finance recover from the defendant, Richard Andrew Merola, . . . whose place of business is Aqua-Mania, Inc., Route 12 Alexandria Bay, New York 13607, the sum of $56,040.00 in restitution and $56,009.00 in penalties and interest accrued as of September 9, 2003 for a total of $112.049.00.

(Merola Aff., Exhibit "C").

On October 10, 2003, plaintiffs received a Schedule of Sales Tax Penalty and Interest Due from the State which indicated a total balance due of $113,187.71. Plaintiffs claim that the new balance included interest on the tax that would continue to accrue until the tax was paid in full. On November 25, 2003, Merola claims he received a Statement of Proposed Audit Change for Sales and Use Tax with a Summary of Penalty Computation by Quarter which indicated that plaintiffs owed the Tax Department $152,271.28. The increase was due to the imposition of a "fraud penalty" imposed pursuant to 20 NYCRR § 536.1.[2] Upon receiving the assessment, Merola petitioned the Department of Tax Appeals for "revision of a determination or refund of sales and use taxes" for the period from December 1, 1997 through November 30, 2000. On April 19, 2007, an Administrative Law Judge ("ALJ") issued a decision and upheld the Department's right to assess the fraud penalty. The ALJ concluded:

> As to petitioner's contention that the Division should be estopped from assessing the fraud penalty because the plea agreement encompassed the full amount of petitioner's tax liability, such contention is without merit as to the fraud penalty and to other

---

[2] Plaintiffs allege that the new computations were the result of a re-audit wherein it was discovered that a sales tax rate of 7% should have applied to the six sales rather than the previously determined 8%. Moreover, plaintiffs claim that the second audit imposed "fraud penalties" that included 50% of the tax due and an amount equal to 50% of the interest accrued to the total tax bill. Defendants offer no contradictory factual assertions.

> penalties and interest assessed herein.
>
> It is well established that the Division is not restricted as a matter of law from issuing a Notice of Determination for the total amount of taxes it determines is due, where that amount is greater than an amount agreed to as restitution in a criminal case based upon the same facts for the same time period.
>
> Since the fraud penalty imposed by Tax Law 1145(a)(2) was not part of the criminal restitution, the Division may assert this penalty by issuance of a Notice of Determination following the conclusion of the criminal matter.
>
> Based on the record herein, it is hereby determined that based upon the pleas of guilty by petitioner to the class E felony of violating Tax Law 1817(c)(2)(a) wherein it was admitted that the failure to collect sales tax was done so "with intent to defraud the state of a political subdivision thereof" and by its president and sole shareholder, Richard Merola, to the class A misdemeanor of offering a false instrument for filing in the second degree, petitioner is collaterally estopped from challenging the fraud penalty.

(Merola Aff., Exhibit "G").

Plaintiffs filed an Exception to the Determination of the ALJ with the Tax Appeals Tribunal. On March 6, 2008, the Tribunal denied plaintiffs' exceptions and held:

> We find . . . that the Division carried its burden of showing the necessary elements to establish fraud, including intent.
>
> The Division is not restricted as a matter of law from issuing a Notice of Determination for the total amount of taxes it determines due, where that amount is greater than an amount agreed as restitution in a criminal case based on the same facts for the same period. Petitioner's and Mr. Merola's subjective understanding notwithstanding, there is nothing in the plea agreement entered before Jefferson County Court that limits the Divisions right to assert fraud penalties and there is nothing in the record to indicate that the State promised not to impose such penalties. Once the criminal proceeding was over and petitioner's file was returned by the Revenue Crimes Unit to the Division of Taxation, it could then properly determine whether fraud penalties should be asserted.

(Merola Aff., Exhibit "H", p. 10).

On August 14, 2009, Merola received a Notice from the Tax Department that Aqua-Mania's Certificate of Authority would not be renewed as it owed "a sales tax debt". In March 2010, Merola received a Notice of Proposed Refusal to Renew a Certificate of Authority.

On August 9, 2010, plaintiffs' attorney forwarded correspondence to defendant Berthoff regarding settlement. Counsel proposed the following:

> Our proposal is to pay 100% of the interest associated with the six transactions of the October 10, 2003 schedule of sales tax provided by the NYS Tax Department following the agreement. Please note the sales tax of 56,040.23 was paid in full. In light of the fact that Aqua Mania, Inc. has no positive monthly income, our offer is to reach a settlement whereby the State agrees to accept a lump sum of $40,335.67 in full satisfaction of all outstanding obligations.
>
> We respectfully request until December 31, 2010, to accomplish this and will agree to pay additional interest from the settlement date until the payment date with an end date of December 31, 2010.

(Merola Aff., Exhibit "L").

On September 14, 2010, Berthoff responded and provided plaintiffs with a list of possible Installment Payment Agreements. Berthoff advised plaintiffs to, "mail this letter back in with your down payment no later than Monday September 20, 2010".

(Merola Aff., Exhibit "M").

On November 2, 2010, plaintiffs' attorney received correspondence from the Conferee of the Bureau of Conciliation and Mediation Services. The Conferee advised that the Notice of Proposed Refusal to Renew a Certificate of Authority issued by the New York State Department of Taxation and Finance ("DTF") would be sustained based upon unpaid sales tax. The Conferee noted that the assessment was still outstanding and further, that no Installment Payment

Agreement had been entered into with the Department. The Conferee provided a consent form reflecting her decision and advised that if the form was not returned within fifteen days, a Conciliation Order would be issued.[3]

(Merola Aff., Exhibit "K").

Plaintiffs have asserted causes of action against the DTF; Jamie Woodward, the Acting Commissioner of the DTF and Jeffrey Berthoff, a TCA II Specialist[4] employed by the DTF. Plaintiffs allege that defendants' conduct violated plaintiffs' rights as secured by the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that the imposition of fraud penalties pursuant to New York State Tax Law § 1145(a)(2) and 20 NYCRR § 536 following a criminal adjudication constitutes additional and successive punishment for the same offense in violation of double jeopardy. Moreover, plaintiffs allege that the imposition of additional penalties was not contemplated by the plea agreement and thus, plaintiffs Due Process rights have been violated. Plaintiff also seeks to prevent defendants from enforcing proceedings against plaintiffs with regard to the Certificate(s) of Authority. Plaintiff seeks declaratory relief, injunctive relief, an award of damages and costs and expenses under 42 U.S.C. § 1988.

## DISCUSSION

### I. PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). In most cases, the party seeking the injunction must show a threat of irreparable injury if the injunction is not granted and either

---

[3] The record does not include any Conciliation Orders.

[4] Plaintiff does not define the position of TCA Specialist. Plaintiff alleges that Mr. Berthoff is charged with the enforcement and collection of Tax Liens.

-6-

(1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party. *See Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (internal quotes omitted).

A movant seeking a prohibitory injunction to maintain the *status quo* must meet the familiar requirement of showing a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in movant's favor. *Resolution Trust v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991). Where, however, a movant seeks a mandatory injunction to alter the *status quo* by commanding some positive act, he must meet a heightened standard of demonstrating a likelihood of success by a "clear" or "substantial" showing. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Further, the heightened standard applies whenever "an injunction – whether or not mandatory – will provide the movant with substantially all the relief that is sought." *Id.* at 33-34.

On this motion, plaintiffs ask that defendants be preliminarily enjoined: (1) from revoking or refusing to renew Aqua-Mania's Certificate of Authority; (2) from levying against plaintiffs' assets to satisfy a tax lien filed by defendants in Jefferson County associated with penalties and interest charged after the criminal charges against plaintiffs were disposed; (3) from assessing any additional penalties and interest against plaintiffs associated with plaintiffs' failure to collect and remit sales tax; and (4) denying any application for a Certificate of Authority to collect sales tax made by Merola for any business entity which he is associated. The relief requested would alter the *status quo* by requiring defendants to immediately to cease assessing penalties and revoking or failing to renew the Certificate of Authority. Thus, the injunction sought is properly

characterized as mandatory. Plaintiffs must show a clear likelihood of success on the merits and irreparable harm.

**A.     Double Jeopardy**

In *Hudson v. U.S.*, 522 U.S. 93, 98-99 (1997), the Supreme Court stated:

> The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, " 'in common parlance,' " be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense and then only when such occurs in successive proceedings.

(internal citations omitted). To determine whether the Double Jeopardy Clause is implicated, courts must analyze whether a particular punishment is civil or criminal:

> Determining whether a statute is criminal or civil is a matter of statutory construction. Thus, a Court must first look to the statutory intent, which analysis may be supplemented by review of the following factors:
>
> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Id*. (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). The *Hudson* Court held, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect, as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty."

*Id.* (internal citations omitted).  However, "only the clearest proof will transform what has been denominated as a civil remedy into a criminal penalty".  *Id.* at 493.

Plaintiffs allege that 20 NYCRR § 536 and Tax Law § 1145(a)(2) are "cloaked in the guise of civil penalties" but are, in fact, criminal penalties which have placed plaintiffs in double jeopardy, having already been punished for the same offense in a criminal proceeding.  In support of the motion, plaintiffs rely exclusively on a recent case from this district: *Abuzaid v. Woodward*, 2010 WL 653307 (N.D.N.Y. 2010) (J. Kahn).  In *Abuzaid*, the plaintiffs claimed that the defendants violated their Fifth Amendment right to be free of successive punishment by imposing fees pursuant to New York Tax Law §481.1(b)(I)[5] after plaintiffs plead guilty and were sentenced for the same offense under New York Tax Law § 1814[6].  *Id.* at *1.  After the plaintiffs plead guilty, the defendants imposed additional penalties upon the plaintiffs.  *Id.* at *2.  The plaintiffs claimed that the imposition of additional penalties under § 481(1)(b) after their criminal prosecution under § 1814(3) constituted double jeopardy and moved for summary judgment.  *Id.* at *6.  In its discussion of double jeopardy, the Court cited *Hudson* and analyzed the "plain

---

[5] Defendants imposed an additional penalty on plaintiffs in the amount of $150 per carton of unlawfully stamped cigarettes possessed pursuant to N.Y. Tax Law § 481.1(b)(1).  The statute provides, in pertinent part:

In addition to any other penalty imposed by this article, the commissioner may (A) impose a penalty of not more than one hundred fifty dollars for each two hundred cigarettes, or fraction thereof, in excess of one thousand cigarettes in unstamped or unlawfully stamped packages in the possession or under the control of any person.

[6] N.Y Tax Law § 1814(c) provides, in pertinent part:

(1) Any person, other than an agent licensed by the commissioner, who willfully possesses or transports for the purpose of sale ten thousand or more cigarettes subject to the tax imposed by section four hundred seventy-one of this chapter in any unstamped or unlawfully stamped packages or who willfully sells or offers for sale ten thousand or more cigarettes in any unstamped or unlawfully stamped packages in violation of article twenty of this chapter shall be guilty of a class E felony.

language" of § 481 applying each "Kennedy Factor" as outlined by the Supreme Court. An analysis of each factor supported the plaintiffs' argument. The court found that the imposition of penalties under § 481(1)(b): (1) was dependent upon the offender's mental state (third factor); (2) was meant to deter criminal activity, not ensure compliance with a civil tax obligation (fourth factor); and (3) applied to behavior that was already a crime (fifth factor). Moreover, the Court found that there was no plausible purpose for the penalties under the statute, other than deterrence of criminal conduct (sixth and seventh factors). *Abuzaid,* 2010 WL 653307, at *8-10. After a detailed analysis of the legislative intent and Kennedy Factors, the court concluded that § 481(1)(b)(I) operated as a criminal penalty to deter criminal conduct and the imposition of penalties subsequent to a prior criminal prosecution for the same conduct violated the plaintiffs rights under the Fifth Amendment. *Id.*

Here, the applicable statutes provide:

> If the failure to pay or pay over any tax to the commissioner within the time required by this article is due to fraud, in lieu of the penalties and interest provided for in subparagraphs (I) and (ii) of paragraph one of this subdivision, there shall be added to the tax (I) a penalty of two times the amount of the tax due, plus (ii) interest on such unpaid tax at the rate of fourteen and one-half percent per annum or the underpayment rate of interest set by the commissioner pursuant to section eleven hundred forty-two of this part, whichever is greater, for the period beginning on the last day prescribed by this article for the payment of such tax (determined without regard to any extension of time for paying) and ending on the day on which such tax is paid.

New York Tax Law § 1145(a)(2).

> When the failure to pay or pay over any tax to the Department of Taxation and Finance within the time required is due to fraud, in lieu of the penalties and interest provided for in section 536.1(a) and (b) of this Part, the penalty and interest prescribed in section 1145(a)(2) of the Tax Law shall be added to the tax.

20 NYCRR § 536.3.

While the Court in *Abuzaid* carefully examined the language, statutory and legislative history of § 481, in this case, plaintiffs have not provided any specific analysis of the Kennedy factors in relation to §1145(a)(2). Rather, plaintiffs vaguely assert that the provision is punitive in nature claiming, "[the] statute's primary function is to serve as an additional penalty for a special category of those individuals who have failed to collect and remit sales tax".[7] Plaintiffs' offer conclusory assertions without citing to any particular portion of the statute or applicable caselaw in support. On a motion for a preliminary injunction, plaintiffs bear the burden of establishing the likelihood of success on the merits. Indeed, contrary to plaintiffs' claim that the statutory purpose is punitive, the New York Court of Appeals has held:

> [T]he Legislature has provided in the Tax Law an integrated scheme of duties on vendors to collect, record, and pay sales tax, and for penalties to be imposed for certain breaches of those duties.
>
> The Legislature's structuring of section 1145 to provide substantial civil penalties for failing to pay over sales tax and to exclude this conduct from the criminal penalties section must be deemed to manifest an intent to exclude such conduct from criminal prosecution under either the Tax Law or the Penal Law.

*People v. Valenza*, 60 N.Y.2d 363, 372 (1983); *see also People v. Walter*, 115 A.D.2d 52, (4th Dep't 1986) (citing Tax Law 1145(b)); *see also People v. Lacay,* 115 A.D.2d 450, 451, (1st Dep't. 1985) (*Valenza* forbids criminal prosecution under a statute (Tax Law § 1145(a)) for whose violation the legislative intent is to impose civil penalties only).

Applying the *Hudson* holding, when the legislature has indicated an intention to establish

---

[7] Defendants have not addressed the Kennedy Factors and simply conclude that *Abuzaid* does not apply because, "the court in that case was considering Tax Law §§ 471 and 481, which relate to cigarette taxes. Tax Law §§ 471 and 481 have nothing to do with this case, and thus *Abuzaid* does not permit plaintiffs in this case to pursue a double jeopardy claim for subsequent civil penalties".

-11-

a civil penalty, plaintiff must provide "the clearest proof" to transform such a designated civil remedy into a criminal penalty.  Here, plaintiffs have not established the "clearest proof" that the imposition of additional penalties pursuant to § 1145(a)(2) was meant to deter criminal conduct or further penalize plaintiffs in violation of plaintiffs' Fifth Amendment rights.  At this stage of the litigation, the Court cannot conclude that § 1145(a)(2) operates as a criminal penalty and it is not necessary or appropriate for the Court to make a final ruling on this issue at this time.  In light of the present record as summarized above, the Court finds that plaintiffs have fallen short of demonstrating a probability of success on the merits on the issue.  *See McAteer v. Riley*, 2008 WL 898932, at *4-5 (M.D. Ala. 2008) (the plaintiff failed to present any argument that the employment and residency restrictions were punitive in support of a motion for summary judgment).  Accordingly, plaintiffs are not entitled to a preliminary injunction on this issue.

**B.     Due Process**

Plaintiffs allege that the imposition of additional penalties not contemplated by the plea agreement violates plaintiffs' Fourteenth Amendment Due Process rights. Merola claims that his guilty plea was not knowingly, voluntarily and intelligently made because he was unaware that additional penalties and interest would be assessed pursuant to Tax Law § 1145(a)(2).  Merola claims that he was not sufficiently aware of the "relevant circumstances and likely consequences" of entering into a plea and that the Confession of Judgment did not contemplate additional penalties.  Defendants contend that the plain language of the plea agreement clearly indicates that plaintiffs reasonably understood that additional interest and penalties could be sought by the Tax Department.  Moreover, defendants argue there are available remedies for the denial of the Certificate of Authority which plaintiffs have not exhausted.

**1.     Plea Agreement**

The Due Process Clause of the United States Constitution requires a showing that a plea was entered both knowingly and voluntarily. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993); *Salas v. U.S.*, 139 F.3d 322, 324 (2d Cir.1998). The longstanding test for determining the validity of a guilty plea is whether it reflects a "voluntary and intelligent choice among the alternative courses of action open to the defendant". *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (plea is valid when it is both knowingly and voluntarily made). Under federal law, a plea is "intelligent" and "voluntary" when a defendant had the advice of counsel, understood the consequences of his plea, and the plea was not physically or mentally coerced, so that the defendant was able to weigh his options rationally. *See Brady v. U.S.,* 397 U.S. 742, 755 (1970); *U.S. v. Fernandez,* 877 F.2d 1138, 1143 (2d Cir. 1989); *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988), *cert. denied,* 488 U.S. 190 (1988) (due process requires only that the defendant "had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way."). "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty". *Id*. (citing *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)).

In this case, plaintiff's broad, self-serving and largely conclusory allegations that he did not comprehend the consequences of his plea are belied by the record which includes his signature on the plea agreement and Confession of Judgment, as well as his statements at the plea

-13-

and sentencing hearing. Plaintiff was represented by counsel at the hearing. The transcript of plaintiffs' plea and sentencing hearing amply demonstrates that plaintiff reviewed the plea agreement and discussed the document with his attorney.

> THE COURT: You have heard the outline of the disposition as set forth by Assistant Attorney General Mr. Simpson. Is that your understanding of what is going to take place here today?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Have you had a chance to talk about this disposition with your attorneys?
>
> THE DEFENDANT: I have, Your Honor.
>
> \*   \*   \*
>
> THE COURT: Now, Mr. Merola, you have heard the outline of the disposition both as to the corporation, Aqua-Mania, Inc. and as to you individually. Is that your understanding of the agreement in this matter?
>
> THE DEFENDANT: Yes, it is, Your Honor.

(Transcript of Plea and Sentence, Exhibit "A" to Merola's Aff., at p. 10-11, 13).

Plaintiff advised the Court that it was his signature on the plea agreement. *Id*. at p. 14. In addition, plaintiff's counsel advised, in open court, that he signed the agreement and explained the terms and conditions of the plea agreement with plaintiff. *Id*. at p. 13. The transcript of the proceeding clearly shows that plaintiff fully understood the charges against him and his rights in connection therewith. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977) (statements at plea allocution "carry a strong presumption of verity"); *U.S. v. Bambulas,* 571 F.2d 525, 526 (10th Cir. 1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth").

### 2. Certificate of Authority

With respect to plaintiffs' claims regarding the Certificate of Authority, plaintiffs concede that, "they have further additional remedies to the Tax Department's Notice of Proposed Refusal to Renew a Certificate of Authority as well as its Decision affirming the proposed refusal". However, plaintiffs argue that the pursuit of such remedies would be futile because the refusal is based upon the fact that plaintiffs owe a sales tax debt and will continue to do so unless this Court remedies this situation.

Exhaustion of administrative remedies may not be required when an administrative appeal would be "futile". *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992) (citation omitted). Here, plaintiffs have not demonstrated, beyond conclusory statements, that any attempt to seek administrative review of the decision to refuse to renew the Certificate of Authority would be futile. *Herbst v. U.S. I.N.S.* 1999 WL 1052461, at *6 (S.D.N.Y. 1999) (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988) (holding that the plaintiff bears the burden of demonstrating administrative review would be futile)). Further, plaintiffs do not cite to any caselaw in support of this assertion. Accordingly, plaintiffs have failed to establish the likelihood of success on the merits with respect to this claim.

The Court finds that, on the present record, plaintiffs have not demonstrated a likelihood of success on the merits on their double jeopardy and due process claims. Due to these deficiencies, the Court concludes that, even if it were to apply the less stringent standard for prohibitory injunctions, it would find that plaintiffs are not entitled to relief on this motion.

## II.   CROSS MOTION

Defendants claim that the DTF is an agency of the State of New York and thus, immune

from suit under 42 U.S.C. § 1983.  Moreover, defendants Woodward and Berthoff claim that plaintiffs have not alleged sufficient personal involvement and therefore, the claims against defendants, as individuals, should be dismissed.[8]  Plaintiffs have not responded to defendants' cross motion and request for dismissal.

### A. Claims against DTF

Defendants correctly argue that plaintiffs' claims against the DTF are barred by the Eleventh Amendment which prohibits a citizen from suing a state or one of its agencies or departments in federal court.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Remy v. NYS Dep't of Taxation and Fin.*, 2010 WL 3925184, at *11 (E.D.N.Y. 2010) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-67 (1989) (Section 1983 does not override the states' Eleventh Amendment immunity from suits in federal court)). Moreover, a lawsuit against a state official in his official capacity is not a suit against the official, but rather against the official's office and thus, it is no different from a suit against the State itself. *Will*, 491 U.S. at 70-71.  Claims for money damages brought against state officials in their official capacities are likewise barred by the Eleventh Amendment.  *See Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir.1997); *see also Kostok v. Thomas*, 105 F.3d 65, 69 (2d Cir.1997).  After the Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123 (1908), however, it has long been settled that private individuals may sue state officials in their official capacities for prospective injunctive relief without running afoul of the Eleventh Amendment.  *See id.*

Accordingly, plaintiffs' claims against the DTF are dismissed.  Moreover, to the extent

---

[8] Defendants do not seek dismissal of plaintiffs' claims for injunctive relief against Woodward and Berthoff in their official capacities as state employees.

-16-

that plaintiffs have asserted claims for monetary damages against defendants Woodward and Berthoff in their official capacities, those claims are dismissed as well.

**B.     Individual Defendants in their Individual Capacities**

The Eleventh Amendment does not extend to a suit against a state official in his individual capacity. *Berman Enter., Inc. v. Jorling*, 3 F.3d 602, 606 (1993) (citing *Hafer v. Melo*, 502 U.S. 21, 27-28 (1991)). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Failure to allege that the defendants were personally and directly responsible for the unlawful conduct renders the complaint "fatally defective on its face" and is subject to a motion to dismiss. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987). Where a defendant is listed in the caption but the body of the complaint fails to indicate what the defendant did to the plaintiff, dismissal is appropriate. *Scott v. Djeck*, 2010 WL 145297, at *9 (N.D.N.Y. 2010) (citations omitted).

Plaintiffs bring claims against Jamie Woodward and Jeffrey Berthoff. Plaintiffs identified these defendants in the caption and in the introductory paragraphs of the complaint. While defendants have not provided affidavits denying personal involvement in this matter, plaintiffs' complaint is completely devoid of any reference to Woodward and Berthoff and plaintiffs utterly fail to allege any personal involvement of any kind regarding these defendants. Accordingly, the Court finds that the complaint fails to state a viable Section 1983 claim against the defendants in their individual capacities, therefore, dismissal is warranted. *See Remy*, 2010 WL 3925184, at *11.

**C.      Leave to Amend**

Under the Federal Rules, a "court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).  Thus, the Court will permit plaintiffs' to file an amended complaint as to Woodward and Berthoff in their individual capacities.   Plaintiffs are instructed that they must allege personal involvement by each individual defendant.  The amended complaint must not include claims against the DTF or claims for monetary damages against Woodward and Berthoff in their official capacities, as previously addressed in this Order.

## CONCLUSION

It is therefore,

**ORDERED** that plaintiffs' motion for a preliminary injunction (Dkt. No. 6) is DENIED; it is further

**ORDERED** that defendants' motions to dismiss all claims against the DTF and monetary claims against defendants Woodward and Berthoff in their official capacity (Dkt. No. 14) are GRANTED with prejudice; and it is further

**ORDERED** that defendants' motion to dismiss all claims against defendants Woodward and Berthoff in their individual capacity (Dkt. No. 14) is GRANTED without prejudice; it is further

**ORDERED** that plaintiff may file an amended complaint to assert a cause of action against defendants in their individual capacity pursuant to 42 U.S.C. § 1983 on or before March 1, 2011, in compliance with the terms of this Order.

**IT IS SO ORDERED.**

Norman A. Mordue
Chief United States District Court Judge

-18-

Date:   January 31, 2011